<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LINDA LLOYD-JONES and JESSICA LLOYD-JONES MCCORMACK, *on behalf of the Estate of Tomas Lloyd Jones*,<br><br>Plaintiffs,<br><br>v.<br><br>SANDRA CONNOLLY, *et al.*,<br><br>Defendants. | No. 20cv912 (EP) (LDW)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

In 2020, Tomas Lloyd-Jones ("Tomas") filed a *pro se* complaint alleging that, while incarcerated: (1) he suffered a seizure in 2018 that caused him to fracture his thumb, which was not properly treated; and (2) a malignant, aggressive brain tumor should have been discovered earlier after multiple seizures. Tomas died soon after filing the initial Complaint, and his estate's executors, Linda Lloyd-Jones and Jessica Lloyd-Jones McCormack, were substituted as Plaintiffs and retained counsel.

After amending the Complaint twice, and about two years and several status conferences into discovery, Plaintiffs sought leave to file a Third Amended Complaint to add sixteen new Defendants (the "Proposed Defendants"), four of whom were named in the initial Complaint. D.E. 89 (the "Motion"). Judge Wettre denied the motion in a well-reasoned Opinion and Order. (D.E.s 106-07, the "Opinion"). Plaintiffs now appeal. D.E. 108. Having considered the matter without oral argument pursuant to Local Rule 78.1, this Court will **AFFIRM** for the reasons below.

## I. BACKGROUND

### A. Facts Underlying the Opinion

The relevant history, which the Court adopts here, is summarized comprehensively in Judge Wettre's Opinion.

*1. [The Initial Complaint]*

[Tomas] acting *pro se*, filed the initial Complaint on January 27, 2020, quoting extensively from his medical records and alleging that while incarcerated in June 2018 he suffered a seizure that caused him to break his thumb, but the thumb injury was not properly treated. (Compl. ¶¶ 2, 6-7, 14-15, 22, 37-39, 42, ECF No. 1). He further alleged that after suffering repeated seizures, he was eventually diagnosed with an aggressive, malignant brain tumor, which should have been detected earlier. (*Id.* ¶¶ 16, 23, 34-35, 40-41). [Tomas] asserted claims for deliberate indifference to medical needs and medical malpractice against personnel at Northern State Prison, Bayside State Prison, and Southern State Prison, specifically: Dr. Hesham Soliman, Dr. Sandra Connolly, Dr. Sharmalie Perera, Dr. Ihuoma Nwachukwu, Jose Torress, Dr. Sherita Latimore-Collier, Dr. Chenna Reddy, Dr. Jeffrey Pomerantz, The Lourdes Group, and the New Jersey Department of Corrections Central Transportation Unit.

*2. [Tomas retains counsel, who files the First Amended Complaint]*

On February 3, 2020, the Honorable Susan D. Wigenton, U.S.D.J. granted [Tomas] leave to proceed *in forma pauperis*, screened the initial Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and dismissed the deliberate indifference and medical malpractice claims against all defendants except Connolly and Pomerantz for failure to state a claim. (ECF No. 2). Although Judge Wigenton also appointed an attorney to represent [Tomas], [Plaintiffs' Counsel] instead entered a notice of appearance on his behalf on April 24, 2020. (ECF No. 6). [Tomas], through counsel, filed a First Amended Complaint on June 12, 2020, naming existing defendants Connolly and Pomerantz, repleading claims against previously-dismissed defendant Latimore-Collier, and adding claims against ten new medical and prison administrator defendants: Sumalatha Mannava, M.D., Bharatkumar Patel, M.D., Marcia Douglas, R.N., Poonam Malani, R.N., Darlene Sosa, R.N., Connie Purcell, R.N., Marcus O. Hicks, George Robinson, John Powell, C. Ray Hughes. (ECF No. 8).

*3. [Tomas dies, and substituted Plaintiffs file the Second Amended Complaint]*

[Tomas] died of brain cancer on June 20, 2020. (2d Am. Compl. ¶ 79, ECF No. 61). Accordingly, with the consent of all parties, a Second Amended Complaint was filed on November 30, 2020 substituting Linda Lloyd-Jones and Jessica Lloyd-

Jones McCormack, the executors of [Tomas]' estate, as plaintiffs and adding wrongful death and survivorship claims against the same thirteen defendants named in the First Amended Complaint. (ECF No. 61).

4. *[Discovery proceeds and numerous deadlines pass without any party seeking leave to amend]*

It appearing that the proper parties had finally been named in the action, the Court held a Rule 16 initial scheduling conference on December 16, 2020 and entered a Pretrial Scheduling Order setting a June 1, 2021 deadline for completion of fact discovery and a May 1, 2021 deadline for any request for leave to file a motion to add new parties or amend pleadings. (ECF No. 65). The Court held telephonic status conferences with the parties on April 12, 2021, July 19, 2021, October 14, 2021, February 8, 2022, and May 2, 2022. Although the parties sought extensions of discovery deadlines on each and every call, at no point did any party request an extension of the deadline for amended pleadings. At the parties' request the Court granted several generous extensions of the fact discovery deadline; however, in an Amended Scheduling Order dated October 14, 2021, the Court extended the fact discovery deadline through January 7, 2022 and warned that "**ALL DATES HEREIN ARE FINAL AND SHALL NOT BE EXTENDED ABSENT A SHOWING OF EXTRAORDINARY CIRCUMSTANCES.**" (ECF No. 79, emphasis in original). Despite this warning, the parties did not complete fact discovery in a timely manner, nor did they demonstrate any extraordinary circumstances justifying their failure to abide by the Court's scheduling Order. In an exercise of its discretion, the Court granted the parties a further, final extension of the fact discovery deadline through March 4, 2022 and made clear that "**THERE WILL BE NO FURTHER EXTENSIONS.**" (ECF No. 82, emphasis in original).

5. *[Plaintiffs seek leave to amend]*

Then, on May 9, 2022, one year after the deadline for doing so, more than two years after this case was filed, and two months after the second final fact discovery deadline, plaintiffs filed a Motion for Leave to file a Third Amended Complaint adding claims against [the Proposed Defendants]. (ECF No. 89-4). Notably, four of the [Proposed Defendants] (Perera, Reddy, Soliman, and Nwachukwu) were previously named as defendants in the January 27, 2020 initial *pro se* Complaint but excluded from the First and Second Amended Complaints. Defendants oppose the addition of Perera, Reddy, Soliman, and Nwachukwu as parties.

Opinion 1-4 (emphases in original).

### B. The Opinion denies leave to amend

Based on this procedural history, Judge Wettre found that Plaintiffs had not met their burden to demonstrate "good cause" to amend their pleadings after the deadline had passed.

3

Opinion 4, *et seq.* Specifically, Judge Wettre focused on Plaintiffs' failure to demonstrate due diligence: "whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Id.* 4 (citing *Sabatino v. Union Twp.*, No. 11-1656, 2013 WL 1622306, at *4 (D.N.J. Apr. 15, 2013)).

Judge Wettre grouped the Proposed Defendants by their association to Tomas. First, Judge Wettre found that Plaintiffs had not established diligence in pursuit of their claims against Perera (Regional Medical Director for the North in the New Jersey Department of Corrections), Soliman (head of the Medical Services Unit for the New Jersey Department of Corrections), Reddy, and Nwachukwu (treating physicians). Judge Wettre held, and this Court agrees, that Plaintiffs "were unquestionably on notice of [those Defendants'] involvement with Mr. Lloyd-Jones' medical treatment from the outset" based on Tomas having named them himself in the Initial Complaint. *Id.* 5-6 (citing *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 280 (E.D. Pa. 2010) ("Where, as here, the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.")). Judge Wettre further noted that Reddy, Nwachukwu, and Perera appeared in Tomas' medical records, which Tomas had "as early as 2020" (two years before the Motion), and Plaintiffs' counsel acknowledged receiving as early as May 27, 2020. *Id.* 6.

As to Defendant Dr. Soliman specifically, Plaintiffs were also aware of his identity from the start but "argued that they did not appreciate the import of his supervisory role…until the current Department of Corrections defendants were deposed." *Id.* 7 (citing D.E. 94-1 ¶¶ 5-6). Again, the Court agrees with Judge Wettre that "myriad other discovery devices were available to plaintiffs to elucidate Soliman's role," including "targeted interrogatories or…discovery from Soliman himself via a Rule 45 subpoena." *Id.* 7 (citing *Wag Acquisition, LLC v. Gattyán Grp. S.à.r.l.*, No. 14-2832,

4

2020 WL 5105194, at *4 (D.N.J. Aug. 31, 2020) (affirming denial of Rule 16 motion to amend where moving party "has pointed to no affirmative steps that it took . . . to investigate the inequitable conduct claim prior to the [amendment deadline including] requesting an extension, and failed to demonstrate "impediment to its pursuit of this supposedly critical discovery[.]")).

Next, Judge Wettre addressed Plaintiffs' unopposed requests to add Proposed Defendants Ghinassi (President and COO of University Correctional Health Care), Brewer (Statewide Medical Director for University Correctional Health Care), Nardelli (Administrator at Southern State Correctional Facility), Griffin (Administrator at Southern State Correctional Facility), LaRue (medical director at Bayside State Prison), Kohler (nurse manager at Bayside State Prison), Cook (nurse manager at Southern State Correctional Facility), Sarra (nurse manager at Northern State Prison), Hernandez (nurse manager at Northern State Prison), Yusuff (nurse at Northern State Prison), Van Liew (nurse at Northern State Prison), and Bentivegna (nurse practitioner at Bayside State Prison).  Though unopposed, Judge Wettre noted—again, correctly—that "it is *[P]laintiffs'* burden to show good cause for the late amendment, even absent specific objection from the defense[.]" *Id.* 8 (emphasis in original).

Plaintiffs attempted to meet that burden by arguing that the "identities of these additional proposed defendants were only revealed in depositions, particularly the deposition of defendant Latimore-Collier taken March 14, 2022, ten days after the final fact discovery deadline." Rejecting this argument, Judge Wettre found that four of this Proposed Defendant group were identified in prior Complaints: Van Liew and Brewer in the Initial Complaint and Bentivegna, Van Liew, and Yusuff in the First Amended Complaint, the latter group "nurses who treated Mr. Lloyd-Jones and undoubtedly appear in his medical records." *Id.*  Counsel further "conceded at oral argument that some of these [Proposed Defendants] were identified in interrogatory responses as persons with potentially relevant knowledge, but [P]laintiffs did not followup or request more information about

5

them, choosing instead to wait until depositions to inquire into the identities of other people involved in [Tomas]' care." *Id.*

Judge Wettre gave Plaintiffs "the opportunity at oral argument to provide more detailed information for the record about when [P]laintiffs discovered the names of each of the [Proposed Defendants] and their alleged roles in [Tomas'] medical care, but counsel was not prepared to do so at that time." *Id.* 8-9. Accordingly, Judge Wettre "gave plaintiffs an opportunity to supplement their Motion to Amend in writing to show diligence in pursuing the facts necessary to assert the claims in the proposed Third Amended Complaint." *Id.* 9. Plaintiffs supplemented their motion to compel, but not the Motion to add the Proposed Defendants. *Id.*

Having considered all of this, Judge Wettre found that "[P]laintiffs were aware by June 2020 at the latest of the identities of [P]roposed [D]efendants Perera, Reddy, Soliman, Nwachukwu, Brewer, Bentivegna, Van Liew, and Yusuff," and failed to use additional discovery tools to explore their roles in Tomas' care. *Id.* And as for the other Proposed Defendants, supervisory personnel, Plaintiffs did not demonstrate "any affirmative steps they took to obtain the information necessary for the proposed amendment prior to the [amendment deadline]." *Id.* Nor did Plaintiffs, "despite the benefit of not one but two final extensions, …complete the party depositions on which they chose to rely for basic information about the leadership structure of the prison medical system until…ten days after the final fact discovery deadline." *Id.* Thus, Judge Wettre, who has capably overseen all discovery and "balanced the complexities of the case" against the strictures of the Federal Rules of Civil Procedure, ultimately found that Plaintiffs had not demonstrated good cause under Rule 16. *Id.*

Likewise, Judge Wettre found that Plaintiffs also could not establish good cause under Rule 15, which weighs the movant's reasons for not amending sooner against the burden of delay on

the District Court. *Id.* 10 (citing *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008)). With respect to Plaintiffs' reasons for not amending sooner, Judge Wettre found that "Plaintiffs offer no compelling justification for the year-long delay in asserting claims against additional treating medical personnel whose role in…medical care was apparent from the same medical records that have been in [Plaintiffs'] possession from the very beginning of the case," or "any explanation for their failure to timely pursue discovery about the [relevant] supervisory structure of the prison medical system[.]" Judge Wettre weighed that against the "significant burden of delay that would be caused by the addition of sixteen parties to an already aged and expansive case," specifically: (1) service of process on sixteen additional individual defendants, many of whom would have to request representation from the State; (2) probable motions to dismiss by many of those defendants; (3) discovery by any surviving defendants, including as many as sixteen additional depositions and reopening earlier party depositions. *Id.* 10-11 (citing *Bjorgung*, 550 F.3d at 267 (affirming denial of leave to amend where delay in filing proposed amended complaint could "send the court through a substantial period of additional discovery and motions")).

And finally, Judge Wettre denied Plaintiffs' motion to compel complete production of the Department of Correction's nursing protocols. Opinion 11-12.

Plaintiffs now appeal. D.E. 108. Defendants Hicks, Robinson, Powell, and Hughes oppose in one joint brief. D.E. 109. The Medical Defendants (Latimore-Collier, Malani, Douglas, Purcell, Sosa, Mannava, Bharatkumar, Connolly, and Pomerantz) filed a second joint opposition. D.E. 110. Plaintiffs have replied. D.E. 111, "Appeal Reply."

## II.   LEGAL STANDARD

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pending before the Court. 28 U.S.C. § 636(b)(1)(A). In considering an appeal of a non-dispositive order by a magistrate judge, a district court will normally modify or vacate an order only if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). A district court's review of a dispositive order is *de novo*. Because "[a] motion for leave to amend is not among those matters listed as dispositive" under § 636(b)(1)(A), it is generally considered a "non-dispositive" motion, and therefore reviewed for clear error.[1] *Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016) (citing *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 251 (3d Cir. 1998).

"A Magistrate Judge's finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is left

---

[1] Plaintiffs are correct that a situation where a magistrate judge's decision on "a motion to amend ... in practice result[ed] in dismissal," presents a closer question with respect to the standard of review. *See Kenny v. United States*, 489 F. App'x 628, 630 n.2 (3d Cir. 2012) ("But neither we nor our sister circuits appear to have resolved the precise issue here—whether a motion to amend that in practice results in dismissal is a dispositive motion—and the authority in the District of New Jersey is divided on this question.").

Nevertheless, the Third Circuit has repeatedly stated that a motion for leave to amend is non-dispositive for purposes of 28 U.S.C. § 636. *See, e.g., Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016) ("Because we find that the Magistrate Judge's denial of [the] motion for leave to amend is nondispositive," appellants were required to comply with Rule 72(a) in order to challenge the magistrate judge's decision that denied the plaintiffs leave to amend sole federal claim); *see also Kenny*, 489 F. App'x at 630 n.2 (3d Cir. 2012) (declining to resolve the issue but stating that "[s]tatutory and precedential authority largely rejects" the argument that motion to amend that in practical terms results in a dismissal should be construed as a dispositive motion for purposes of 28 U.S.C. § 636).

But regardless of the standard—*de novo* or clear error—the Court arrives at the same conclusion, in part because the record (other than Plaintiffs' reply, discussed in footnote 2) is largely the same.

with the definite and firm conviction that a mistake has been committed." *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2009 U.S. Dist. LEXIS 49109, at *3 (D.N.J. June 9, 2009); *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)). "A [ruling] is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp.2d 162, 164 (D.N.J. 1998). The appealing party bears the burden of establishing that the Magistrate Judge's decision was clearly erroneous or contrary to law. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). However, courts may deny amendment based on (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (citing *Foman*, 371 U.S. at 182. Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining,* 615 F.3d at 174).

### III. ANALYSIS

Plaintiffs argue that the Opinion was erroneous. Plaintiffs argue that the bulk of the motion should have been granted as unopposed, and the Opinion erroneously applied "an unrealistic and overly burdensome obligation on Plaintiffs to do independent research to obtain information outside the discovery process to identify the identity of possible defendants." Appeal 15. Plaintiffs

also argue that Judge Wettre's Opinion implies that "Plaintiffs should have added every single person in the medical records, which would have meant dozens of additional defendants," known as "scattershot pleading." *Id.* Plaintiffs also argue that Judge Wettre did not sufficiently consider Plaintiffs' stated reasons for delay and demonstration of due diligence. *Id.* 16-18.

The Court does not agree. Plaintiffs acknowledge that they "received documents and answers to discovery requests from the Medical Defendants on or about May 4, 2021; Jail Defendants on or about July 28, 2021; and Defendant Bharatkumar Patel M.D. on or about October 25, 2021." D.E. 108-2 ¶ 11. Plaintiffs admit that discovery and new documentation "revealed that a number of [Proposed Defendants] were much more actively involved in the specific care of [Tomas] than previously known." Appeal 17. Their involvement, in other words, was "previously known." *Id.* Accordingly, nothing suggests that Judge Wettre's determination that Plaintiffs did not pursue information and amendment with sufficient due diligence was clearly erroneous.

It was not until October 10, 2022, when Plaintiffs filed their reply in further support of this appeal, that Plaintiffs finally addressed, in sufficient detail,[2] Judge Wettre's concern that Plaintiffs needed to "provide more detailed information for the record about when [P]laintiffs discovered the names of each of the [Proposed Defendants] and their alleged roles in [Tomas'] medical care[.]" *Id.* 8-9; Appeal Reply 5. But even if the Court considered the new information, it would nevertheless fail to satisfy Plaintiffs' burden of demonstrating diligence *and* merit.

The first group of Proposed Defendants comprises supervisory personnel or doctors, beginning with doctors Perera, Soliman, Reddy, and Nwachukwu. Each was named in Tomas'

---

[2] The Court acknowledges that Plaintiffs' counsel attached to the underlying motion a certification detailing the history of the litigation and efforts to obtain the Proposed Defendants' identities. D.E. 89-3. However, that certification is vague as to the discovery of individual Proposed Defendants. *See, e.g., id.* at 4, ¶ 21 ("On or about March 14, 2022, Plaintiffs deposed Defendant Dr. Sherita Lattimore-Collier, who was a supervisor of some of the Defendants.").

10

original pro se Complaint, contradicting Plaintiffs' argument that they did not learn of their identities and/or roles until deposition testimony (Perera, Soliman and Nwachukwu) or expert review of documents (Reddy) and undermining any diligence argument. The Court agrees with Judge Wettre that "myriad other discovery devices were available to plaintiffs to elucidate Soliman's role," including "targeted interrogatories or…discovery from Soliman himself via a Rule 45 subpoena." *Id.* 7 (citing *Wag Acquisition, LLC v. Gattyán Grp. S.à.r.l.*, No. 14-2832, 2020 WL 5105194, at *4 (D.N.J. Aug. 31, 2020) (affirming denial of Rule 16 motion to amend where moving party "has pointed to no affirmative steps that it took . . . to investigate the inequitable conduct claim prior to the [amendment deadline including] requesting an extension, and failed to demonstrate "impediment to its pursuit of this supposedly critical discovery[.]")).

But even if diligence could be demonstrated, the substance of Plaintiffs' proposed amendments is also of questionable merit. For example, for doctors Reddy and Nwachukwu, Plaintiffs add one paragraph each summarizing a single visit. *See* D.E. 89-5 (redlined proposed amended complaint), "Proposed Compl." ¶¶ 62, 94. But Plaintiffs do not specifically name either in any enumerated claim, making it unclear exactly what they are asserting against those two Proposed Defendants.

The same can be said of Plaintiffs' efforts to add a second group of Proposed Defendants comprising various supervisory personnel: Ghinassi (President and COO of University Correctional Health Care), Brewer (Statewide Medical Director for University Correctional Health Care), Nardelli (Administrator at Southern State Correctional Facility), Griffin (Administrator at Southern State Correctional Facility), LaRue (medical director at Bayside State Prison), Kohler (nurse manager at Bayside State Prison), Cook (nurse manager at Southern State Correctional Facility), Sarra (nurse manager at Northern State Prison), Hernandez (nurse manager at Northern

11

State Prison). As Judge Wettre recognized, Plaintiffs conceded (and do not dispute now) that at least some of those Proposed Defendants were named in earlier answers to interrogatories served on May 4, 2021. Opinion 8; D.E. 108-11 at 4.

Likewise, Plaintiffs argue that they did not learn about Maria Sarra and Theresa Hernandez, both Nurse Managers at Northern State Prison, until a May 6, 2022 email from Defendants. Appeal Reply 5. But Plaintiffs filed their initial motion on May 10, 2022, after that email. It is thus unclear why Plaintiffs waited until October 10, 2022, when they filed the reply in further support of this appeal, to include that email. D.E. 111-11 at 2.

Moreover, even if Plaintiffs could demonstrate diligence on these claims, Sarra and Hernandez are, like every other supervisor, consolidated into one nonspecific claim that they collectively "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and where "they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" Proposed Compl. ¶¶ 124, 125.

It is true that supervisory liability has been recognized where supervisors have "'established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and where "they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). But to assert such claims, Plaintiffs must allege at least some facts supporting those claims. *Weber v. Erie Cty.*, No. 1:19-00124, 2020 U.S. Dist. LEXIS 186883, at *8 (W.D. Pa. Oct. 8, 2020) (dismissing claim where plaintiff alleged no facts supporting theories of liability and relied "on pure conclusions of

law and recitations of claim elements that are entitled to no weight in deciding a motion to dismiss"); *Parris v. N.Y.S. Dep't Corr. Servs.*, 12 Civ. 1849, 2013 U.S. Dist. LEXIS 73407 (S.D.N.Y. May 23, 2013) (cleaned up) ("conclusory, unsupported allegations of gross negligence or the existence of a policy are simply insufficient to establish liability of supervisory prison officials under § 1983")). Here, Plaintiffs do not name any "policy, custom, or practice," let alone one specific to the supervisory claims or any individual supervisor. Accordingly, Judge Wettre properly denied Plaintiff leave to amend because the proposed amendments would have been futile even if they were diligently pursued.

Judge Wettre also denied Plaintiffs' unopposed requests to add Proposed Defendants who directly treated Plaintiff: Yusuff (nurse at Northern State Prison), Van Liew (nurse at Northern State Prison, also referred to as "Van Lien.") and Bentivegna. Plaintiffs allege that Yusuff and Van Liew, who both treated Tomas when he suffered an epileptic seizure and injured his thumb on June 12, 2018, did not immediately report the situation to a doctor or send Tomas for a further emergency evaluation where additional diagnostic tools would be available. Proposed Compl. ¶ 49, 51.

Here, diligence remains an issue. Like Dr. Reddy, Plaintiffs allege that Yusuff and Van Liew were allegedly "not mentioned in depositions" and identified only in "experts review of documents." Appeal Reply 5. But as Judge Wettre found, Van Liew was identified in Tomas' initial pro se Complaint, both Van Liew and Yusuff were identified in the First Amended Complaint drafted by counsel, and Van Liew and Yusuff, together with Bentivegna, are nurses who treated Tomas and therefore "undoubtedly appear in his medical records." Opinion 8.

Similarly, Plaintiffs assert that they first learned of Nurse Bentivegna at Latimore-Collier's March 14, 2022 deposition and add a specific factual allegation: that Nurse Bentivegna examined

13

Tomas after his new onset seizure, but did not send him to the emergency room for an evaluation of either his hand or his brain. Proposed Compl. ¶ 60. But even the deposition discussed a June 15, 2018 visit with Nurse Bentivegna memorialized in medical records that would have been available to Plaintiffs years ago. D.E. 89-15 at 50-51. It is likely for that reason, as Judge Wettre recognized, that Bentivegna was identified in the First Amended Complaint drafted by counsel. Opinion 9. Accordingly, Judge Wettre properly denied leave to amend. For each Proposed Defendant, Plaintiffs failed to demonstrate diligence, merit, or in some cases both.

Additionally, Plaintiffs address only briefly the second aspect of Judge Wettre's amendment analysis, which ably explained the delay that would arise from amendment and weighed it against Plaintiffs' failure to seek amendment earlier. Appeal 19. Plaintiffs argue that "Defendants and, frankly, the Court" are as much or more to blame than Plaintiffs for any delay in seeking amendment. Appeal 19.

Whatever the merits of that argument, it centers on *past* delay, not the potential for future delay. Plaintiffs' only argument in that regard is that "it is unlikely this case will get a trial date for years." *Id.* This argument is not only unsupported, but also self-defeating: the matter certainly will not see trial soon if, as Judge Wettre found, the matter effectively begins litigation anew with amendment, service, pleadings and motion practice, and discovery.

Plaintiffs' Appeal relies primarily[3] on two cases, neither persuasive here.[4] The first is *Baez v. Paulo*, in which the Appellate Division discussed the standards for amending a complaint to

---

[3] Plaintiff's Appeal Reply adds myriad new arguments and evidence which were not only absent from its opening brief, but also from the papers before Judge Wettre. The Court therefore cannot consider them on appeal, though as noted above, they would not change the outcome.

[4] A third case, cited in Plaintiffs' reply, is plainly distinguishable because it was, unlike this matter, "not a case in which the names of the fictitious defendants were contained in…medical records or in the incident report in his counsel's possession." *Baker v. J.J. De Luca Co.*, No. A-3315-07T2, 2008 N.J. Super. Unpub. LEXIS 688, at *23 (App. Div. Oct. 10, 2008).

substitute the true name of a fictitious defendant pursuant to N.J.R. 4:26:4. 453 N.J. Super. 422 (App. Div. 2018). To utilize that procedure, a plaintiff must demonstrate two phases of due diligence: (1) endeavoring to identify the responsible defendants *before* filing the original complaint; and (2) taking prompt steps to amend *after* becoming aware of the defendant's identity. *Id.* 439.

*Baez* does not help Plaintiffs, who selectively characterize its holding: that it "allow[ed] the plaintiff to…add other defendants even where they were in medical records because it [was] unclear from the records what the defendants' actual role was in the plaintiff's treatment." Appeal 16 (citing 453 N.J. Super. at 437). But *Baez* found that the plaintiff had *not* acted with due rdiligence as to the claims against two doctors whose names "were clearly typed on their respective reports within decedent's chart" to the extent that the chart identified them as admitting and discharging physicians, respectively. *Id.* 441-44. The only claims against those doctors that *could* proceed related to their roles (if any) as "attending physicians" only because the plaintiff's chart misidentified a third doctor as the "attending physician" and plaintiff "did not fail to exercise due diligence in maintaining that belief until she was served with [the third doctor's] affidavit correcting the misimpression." *Id.* 443.

Thus, like the *Baez* claims against the doctors as admitting and discharging physicians, exercising due diligence to investigate any ambiguity and explore any theory of liability was Plaintiffs' responsibility even before the action was filed. But as Judge Wettre found, Plaintiffs did not sufficiently demonstrate diligence—Plaintiffs explicitly concede that they pursued information largely within the deposition process.

The second case cited by Plaintiffs, *Rosenberg v. Englewood Hosp. & Med. Ctr., Inc.*, is likewise mischaracterized. Appeal 16 (citing No. A-4525-16T4, 2019 N.J. Super. Unpub. LEXIS

15

642 (App. Div. Mar. 21, 2019)). *Rosenberg* involved a fatal infusion of Iron Dextran. *Id.* 2-3. Plaintiffs are correct that the Appellate Division allowed the plaintiff "to add [the] defendant [nurse] even though the nurse's name was listed within medical records that were already in plaintiff's possession prior to filing." *Id.* But Plaintiffs omit crucial context: *Rosenberg*'s medical records named the nurse elsewhere in the records, but not for the "critical" infusion event, which identified the fictitious defendant/nurse only as "Agency Nurse RN 104." *Rosenberg*, 2019 N.J. Super. Unpub. LEXIS 642, at *1, 19-23.

In other words, there was no reason to conclude from the records that "Agency Nurse RN 104," who administered the injection, and the named nurse performing "apparently routine" services were the same person. Naming the nurse would have made little sense because the malpractice's mechanism and culprit (the injection) were evident. Here, Plaintiffs' theory of liability is much broader, encompassing multiple care providers who allegedly missed his tumor. And most significantly, the records, and even Tomas himself, identified many of them.

Another key distinction: for nearly two years before filing suit, the *Rosenberg* decedent's wife and executor of his estate pursued the decedent's medical records, retained an expert (who identified the infusion as the cause of death), engaged in lengthy settlement discussions, and posed specific questions to the hospital (which the hospital ignored) seeking to identify "RN 104." *Id.* at *4-7. Whatever Plaintiffs' efforts here, Plaintiffs explicitly acknowledge in this Appeal that "[p]erhaps, with significant research outside the discovery process, Plaintiffs could have discovered the identities of those in specific leadership positions." Appeal 16.

Finally, Plaintiffs also challenge Judge Wettre's denial of complete production of complete nursing protocols. Appeal 20. Plaintiffs express their dissatisfaction with Judge Wettre's

determination, but do not explain why it was erroneous. Accordingly, this Court will not disturb it.

## IV. CONCLUSION

For the reasons above, it is

**ORDERED** that Plaintiffs' appeal (D.E. 108) is **DENIED** and Judge Wettre's Opinion and Order denying Plaintiff's motion to amend/compel (D.E.s 106-07) are **AFFIRMED**.

Dated: February 7, 2023

Evelyn Padin, U.S.D.J.